Robert G. High et al., Petitioners *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent.

Argued March 1, 1982, before President Judge CRUMLISH and Judges ROGERS and BLATT, sitting as a panel of three.

*A. Martin Herring,* for petitioners.

*Francine Ostrovsky,* Associate Counsel, with her *William J. Kennedy,* Associate Counsel, and *Richard L. Cole, Jr.,* Chief Counsel, for respondent.

OPINION BY JUDGE BLATT, July 16, 1982:

Robert G. High (claimant), representaive of other claimants similarly situated, appeals a decision of the Unemployment Compensation Board of Review (Board) denying his claim on the basis that he had engaged in a work stoppage other than a lockout under Section 402(d) of the Unemployment Compensation Law.[1]

The following facts,[2] which were determined by the Board, are not challenged by the claimant. The claimant was a professional employee of the Reading School District (District) and a member of the Reading Education Association (Association), which functioned as his collective bargaining representative. A collective

---

[1] (Law) Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended,* 43 P.S. §802(d) reads, in pertinent part:

An employe shall be ineligible for compensation for any week—

. . .

(d) In which his unemployment is due to a stoppage of work, which exists because of a labor dispute (other than a lock-out) at the factory, establishment or other premises at which he is or was last employed. . . .

[2] Our scope of review in unemployment compensation cases where, as here, the party with the burden of proof did not prevail below, is to determine whether or not the Board eerred as a matter of law or necessary findings of fact can be sustained without a capricious disregard of competent evidence. *Pearce v. Unemployment Compensation Board of Review,* 53 Pa. Commonwealth Ct. 199, 416 A.2d 1169 (1980) ; *see Grzech v. Unemployment Compensation Board of Review,* 56 Pa. Commonwealth Ct. 9, 423 A.2d 1364 (1981) (burden on claimant in constructive lockout situation).

bargaining agreement had been in effect between the Association and the District and had an expiration date of June 30, 1978. Prior to its expiration, negotiations took place between the Association and the District in order to enter into a new agreement; such efforts, however, were unsuccessful. The parties then engaged in an impasse proceeding in which state mediation and fact-finding were utilized and during such process strikes by public employees, which would otherwise be authorized, were prohibited. During the course of the aforementioned negotiations and prior to September 5, 1978, the District informed the Association that the work day (7-7 hours 25 minutes)[3] which had existed under the expired agreement was no longer acceptable to the District and that, in the fall term of 1978, employees would be required to work a full eight hour day. The Association did not accept this proposal by the District but made a firm offer to continue to work under the same terms and conditions of the expired agreement. When the fall school term commenced on September 5, 1978, the District implemented its proposed change in the work day and the claimant, believing that a strike was prohibited by law until after October 25, 1978, reported to work. Then, sometime[4] after September 5, 1978, and prior to Oc-

---

[3] The expired agreement stated that the "elementary teachers' day shall not be more than 7 hours 15 minutes" and that the "secondary teachers' day shall not be more than 7½ hours." The record indicates that the teachers, during the period covered by the expired agreement, actually worked the following hours: Reading Senior High, 8:00 a.m. to 3:10 p.m. (7 hours 10 minutes); Junior High Schools, 8:00 a.m. to 3:25 p.m. (7 hours 25 minutes); Elementary Schools, 8:30 a.m. to 3:15 p.m. (6 hours 45 minutes).

[4] The precise date of this offer or notification by the District was not specified by the Board (or the referee) in its findings of fact. The record indicates that the superintendent of schools testified that such offer was "verbalized [to the Association] on several occasions" and that it was once made on October 24, 1978.

tober 25, 1978, the Association and the claimant were informed by the District that starting October 25, 1978, students would be dismissed earlier so that the work day would conform to the work day which had existed under the expired agreement. However, on October 25, 1978, the work day was not reduced, and, because work was not available to the claimant under the same terms and conditions of the expired agreement, and in spite of the Association's firm offers to continue working under the expired agreement, the claimant, along with the membership of the Association, engaged in a work stoppage effective October 26, 1978. Two days after the work stoppage had begun, the District offered (in writing) to have work resumed under the terms and conditions of the expired agreement. The Asosciation rejected the District's offer and as a result, the claimant did not return to work throughout the labor dispute which eventually ended on November 28, 1978.[5]

The Bureau (now Office) of Employment Security determined that the claimant's unemployment was due to a strike[6] and denied his application for benefits. Upon appeal the referee reversed concluding that because, when the fact-finding procedure was finished (on October 25, 1978), the terms and conditions of the expired agreement were no longer available due to the

---

[5] There is a discrepancy between the record, which states that the labor dispute ended on November 28, 1978, and the referee's and Board's finding that the dispute ended on November 28, 1980.

[6] It is well-settled that where work is available to an employee under the same terms and conditions of employment which had existed prior to a stoppage of work and the employee elects not to continue to work under those terms and conditions that the employee is engaged in a labor dispute other than a lockout—a strike which would render him ineligible for benefits. *See Philco Corp. v. Unemployment Compensation Board of Review*, 430 Pa. 101, 242 A.2d 454 (1968) ; *Vrotney Unemployment Compensation Case*, 400 Pa. 440, 163 A.2d 91 (1960).

District's unilateral change in the claimant's work day, that the work stoppage was therefore a lockout.[7] The Board agreed with the referee that the District's change in the work day caused the work stoppage to be a lockout for October 26 and 27 of 1978 but concluded that, when the Association rejected the employer's offer on October 28, 1978 to have work resumed under the terms of the expired agreement, the labor dispute was converted to a strike. The Board further reasoned that, despite the fact that the labor dispute was a lockout for October 26 and 27, the claimant must be totally denied benefits during the compensable week ending October 28, 1978 because Section 402(d) of the Law provides that an "employe shall be ineligible for compensation *for any week* . . . in which his unemployment is due to a stoppage of work . . . (other than a lockout)." (Emphasis added.)

Both sides agree in their statements of questions presented before this Court that the central issue before us is whether or not the October 26 and 27, 1978 lockout could be converted to a strike by the Association's October 28, 1978 rejection of the District's offer to permit the teachers to work under the status quo as it existed prior to the expiration of the last collective bargaining agreement.

The claimant argues that the law does not recognize an adjustable status quo and that, once an employer disrupts the status quo, he cannot restore it. Although he does not directly support this proposition with any case law, he seeks to justify the rejection of the District's offer of October 28, 1978 on the basis that he had no assurance that the District would not change its mind and change conditions once the teachers had returned. The Board, on the other hand, ar-

---

[7] It is equally clear that where an employer will not permit an employee to work under the preexisting terms and conditions of employment, a lockout results. *See Philco; Vrotney.*

gues that the status quo is a fluid rather than a firm concept.

Semantics aside, we must consider the purpose of Law in general, and of Section 402(d) in particular. In *Philco,* 430 Pa. at 110, 242 A.2d at 459, our Supreme Court noted that "[o]ur unemployment compensation benefits are paid out of a public fund created to aid those . . . who have lost their jobs through no fault of their own." *See Grossman v. Unemployment Compensation Board of Review,* 52 Pa. Commonwealth Ct. 499, 415 A.2d 1018 (1980). Moreover, in construing Section 402(d) of the Law, "[i]t is settled law that the responsibility for a work stoppage is assessed against the party whose actions *constituted the final cause* thereof, and it is the duty of the compensation authorities to ascertain the final cause and responsibility." *Bokoski Unemployment Compensation Case,* 206 Pa. Superior Ct. 96, 100, 211 A.2d 124, 126 (1965) (emphasis added); *see also Gladieux Food Services, Inc. v. Unemployment Compensation Board of Review,* 479 Pa. 324, 388 A.2d 678 (1978).

Here, we agree with the Board that the *final* cause of the *work stoppage, Bokoski,* was the claimant's and the Association's October 28, 1978 rejection of the District's written offer and that the lockout was consequently converted to a strike on this date.[8] To hold

---

[8] We do not condone the District's non-implementation of its verbalization which informed the employees that the work-day would be reduced on October 25, 1980 nor do we condone its unilateral increase of the work-day beginning September 5, 1978. It is clear that if the employees engaged in a work stoppage on September 5, 1978 that it would have been a lockout. However, they were not permitted to by the impasse procedure and consequently, in this matter, there can be no ratification or acceptance of the implemented terms and conditions with a result being the establishment of a new "status quo." *C.f., Grzech,* (acceptance by performance).

Thus, the term "status quo" as used in the instant matter refers to the terms and conditions of employment *as they existed just before*

that the status quo once altered could never be restored,[9] or that only one party could conceivably, during the period of the labor dispute, be the cause of a work stoppage would serve to circumvent the Law's underlying purpose of encouraging both the employer and the employee to "be sincere in their desire to *maintain* the continued operation of the . . . enterprise," and to discourage the subsidization of those employees whose unemployment is largely attributable[10] to their own unwillingness to work under the status quo during the period of contract negotiations. *Vrotney*, 400 Pa. at 444, 163 A.2d at 93 (emphasis added).

Finding no error of law in the Board's conclusion here as to the central issue concerned, and further noting that the legislature has mandated that ineligibility under Section 402(d) of the Law shall be determined on a weekly basis, we must affirm the Board's order denying this claimant's application for benefits.

---

*the expiration of the prior collective bargaining agreement* and does not refer to the terms and conditions as changed by the District on September 5, 1978. Here, therefore, beginning on October 26, 1978, it is clear that there was a lockout because the District deviated from the terms and conditions of the prior agreement. And, on October 28, 1978, we believe that it is equally clear that in rejecting the District's written offer to return to the status quo or terms and conditions of the prior agreement, said lockout was converted into a strike.

[9] Our Supreme Court's decision in *Unemployment Compensation Board of Review v. Sun Oil Co.*, 476 Pa. 589, 383 A.2d 519 (1978) and our decision in *Local 730, United Assoc. of Journeymen and Apprentices of the Plumbing and Pipe-Fitting Industry*, 63 Pa. Commonwealth Ct. 195, 437 A.2d 1055 (1981), imply that causation can change in a work stoppage situation.

[10] "If fault of a work stoppage is attributable to both employer and employees, compensation must be denied. The purpose of the Compensation law was to benefit faultless employees." *Toma v. Unemployment Compensation Board of Review*, 4 Pa. Commonwealth Ct. 38, 43, 285 A.2d 201, 205 (1971).

ORDER

AND Now, this 16th day of July, 1982, the order of the Unemployment Compensation Board of Review in the above-captioned matter is hereby affirmed.

Judge MENCER did not participate in the decision in this case.