McCormick Dray Lines, Inc., Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent. Olen M. Johnson et al., Intervenors.

Submitted on briefs February 1, 1983, to President Judge CRUMLISH, JR. and Judges WILLIAMS, JR., CRAIG, MACPHAIL and DOYLE.

*William J. Flannery, Morgan, Lewis & Bockius,* for petitioner.

No appearance for respondent.

*Ira H. Weinstock, P.C.,* for intervenors.

OPINION BY PRESIDENT JUDGE CRUMLISH, JR., May 6, 1983:

McCormick Dray Lines, Inc., appeals an Unemployment Compensation Board of Review order awarding benefits. We affirm.

McCormick, a trucking company primarily engaged in interstate and intrastate hauling of freight, employs the claimants, truckers who are members of Teamsters Local No. 764. McCormick and the Teamsters were parties to a three-year collective bargaining agreement which expired on November 24, 1980. During negotiations, following the agreement's expiration, the truckers continued to work under its terms and conditions.

On December 22, 1980, McCormick and the Teamsters agreed, in writing, to a day-to-day extension of the expired contract, with the stipulation that the union would give a forty-eight hour strike notice before striking. On January 21, 1981, however, the Teamsters unilaterally rescinded the strike notice agreement, but continued working on a day-to-day basis until February 5, 1981, when they struck.

Eleven days after the strike began, the Teamsters sent McCormick a telegram unconditionally offering to return to work immediately. Four days later, McCormick rejected the offer and refused to resume business until the contract dispute was resolved. Three days later, the Teamsters again made an unconditional offer to return to work, but received no response from McCormick.

McCormick and the Teamsters finally negotiated a new contract, which was ratified by the Teamsters' membership on March 4, 1981, the truckers returning to work the next day.

McCormick argued that, due to their strike action, the truckers were disqualified for benefits by Section 402(d) of the Unemployment Compensation Law.[1] This section provides, in pertinent part, as follows:

An employe shall be ineligible for compensation for any week—

. . . .

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §802(d).

(d) In which his unemployment is due to a stoppage of work, which exists because of a labor dispute (other than a lock-out) at the factory, establishment or other premises at which he is or was last employed. . . .

The referee, however, awarded benefits, commencing from the date of the Teamsters' offer to return to work, concluding that McCormick's refusal to resume operations converted the cause of the work stoppage to a lockout. The Board affirmed.

A claimant whose employment has been interrupted by a work stoppage arising out of a labor dispute bears the burden of proving that the stoppage resulted from a lockout. *Kerner v. Unemployment Compensation Board of Review*, 68 Pa. Commonwealth Ct. 132, 448 A.2d 666 (1982). Our scope of review where the party with the burden of proof prevailed below is limited to determining whether an error of law has been committed or whether any necessary finding of fact is unsupported by substantial evidence. *Dodson v. Unemployment Compensation Board of Review*, 63 Pa. Commonwealth Ct. 245, 437 A.2d 1080 (1981).

McCormick has presented the following question for our review:

Did the Unemployment Compensation Board of Review err as a matter of law in ruling that a disqualifying strike was converted into a lockout, for unemployment compensation purposes, when following the alteration of the status quo and the resulting discontinuance of the employer's operation, the employees requested unconditionally to return to work under the terms and conditions of the expired contract?

McCormick now argues that the Board legally erred, contending that the initial cause of a work stoppage is determinative of eligibility for compensation for the entire duration of the work stoppage. We dis-

agree. As the Superior Court stated in *Westinghouse Electric Corp. v. Unemployment Compensation Board of Review*, 187 Pa. Superior Ct. 403, 413-14, 144 A.2d 679, 684 (1958):

> Each week of unemployment is the subject of a separate claim, the validity of which is determined by a consideration of conditions existing within that week; consequently a work stoppage which is initially a strike may subsequently be converted into a lockout. Burger Unemployment Compensation Case, 168 Pa. Superior Ct. 89, 91, 93, 77 A.2d 737 [1951].

The Pennsylvania courts have not subsequently questioned this rule.[2]

In *High v. Unemployment Compensation Board of Review*, 67 Pa. Commonwealth Ct. 472, 447 A.2d 701 (1982), we held that a work stoppage, though initially caused by a lockout, was caused by a strike subsequent to the employees' refusal of the employer's offer to resume operations under the terms and conditions of the expired contract. We reasoned:

---

[2] McCormick's reliance upon *Philco Corp. v. Unemployment Compensation Board of Review*, 430 Pa. 101, 242 A.2d 454 (1980), is misplaced. Although our Supreme Court stated:

> Since the purpose of our unemployment system is to compensate an individual when work has been denied him through no fault of his own, logically *the test* of whether a work stoppage resulted from a strike or a lock-out *requires us to determine* which side, union or management, first refused to continue operations under the status quo after the contract had technically expired, but while negotiations were continuing.

*Id.* at 103, 242 A.2d at 454 (emphasis added), it was not called upon to address the issue of a shift in responsibility for a work stoppage. The same is true of the other cases cited by McCormick in support of this contention. *See*, for example, *Vrotney Unemployment Compensation Case*, 400 Pa. 440, 163 A.2d 91 (1960); *Borello v. Unemployment Compensation Board of Review*, 490 Pa. 607, 417 A.2d 205 (1980).

To hold . . . that only one party could conceivably, during the period of the labor dispute, be the cause of a work stoppage would serve to circumvent the Law's underlying purpose of encouraging both the employer and the employee to "be sincere in their desire to maintain the operation of the . . . enterprise. . . ." (Footnote and emphasis deleted.)

*Id.* at 477-78, 447 A.2d at 704-05 (quoting *Vrotney Unemployment Compensation Case,* 400 Pa. 440, 444, 163 A.2d 91, 93 (1960)). We believe this reasoning is likewise applicable to a situation where the employer has refused the employees' offer to return to work under the terms and conditions of the expired contract. *See Aluminum Co. of America v. Unemployment Compensation Board of Review,* 9 Pa. Commonwealth Ct. 368, 305 A.2d 389 (1973).

Affirmed.

### Order

The order of the Unemployment Compensation Board of Review at B-198975, dated September 2, 1981, is hereby affirmed.

Judge WILLIAMS, JR., concurs in the result only.