Thomas D. Grandinetti, individually and for the class he represents, to wit, the professional employees of the School District of the City of Erie, Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent.

Barbara T. Kelley, individually and for the class she represents, to wit, the professional employees of the School District of the City of Erie, Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent.

134

A. James Welch, individually and for the class he represents, to wit, the professional employees of the School District of the City of Erie, Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent.

Marijane E. Dillon, individually and for the class she represents, to wit, the professional employees of the School District of the City of Erie, Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent.

Margaret E. Sisson, individually and for the class she represents, to wit, the professional employees of the School District of the City of Erie, Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent.

Charlotte Dobbs, individually and for the class she represents, to wit, the professional employees of the School District of the City of Erie, Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent.

Argued September 14, 1984, before Judges DOYLE, COLINS and PALLADINO, sitting as a panel of three.

*George Levin,* for petitioners.

No appearance for respondent.

*Michael I. Levin,* with him, *William Fearen, Cleckner and Fearen,* for intervenor, Erie School District.

OPINION BY JUDGE PALLADINO, January 22, 1985:

Petitioners in these consolidated cases are token unemployment compensation claimants who represent the members of the Erie Education Association (Union). In its decision below, the Unemployment Compensation Board of Review (Board) affirmed a referee's decision denying benefits under Section 402(d) of the Unemployment Compensation Law (Law),[1] concluding that Petitioners' unemployment was due to a strike, rather than a lock-out by the Erie School District (District).[2] For the reasons set forth below, we reverse.

In January of 1981, the Union and the District began negotiations in order to establish a new collective bargaining agreement to succeed the agreement which was to expire on June 30, 1981. In June of 1981, when it appeared that the negotiations would not be imminently fruitful, the Union agreed to continue working for a reasonable period of time beyond the expiration of the old agreement, under an extension of the terms of the old agreement.

One of the terms of the old agreement required the District to maintain hospital, medical, surgical and $250,000 major-medical insurance benefits equal to or greater than those provided in Blue Cross of Western Pennsylvania and Pennsylvania Blue Shield (BC/BS). Under the old agreement the District had maintained BC/BS coverage, but its contract with BC/BS was due to expire on September 30, 1981. Therefore, the District began soliciting bids for its insurance obligations in April of 1981. This solicitation produced one bid for health care insurance from Alpha, a health care

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, as amended, 43 P.S. §802(d).

[2] The District was granted leave to intervene; the Board did not file a brief or appear to argue.

plan of the Insurance Trust of the Pennsylvania School Boards Association.[3]

On July 15, 1981, the District elected to change insurance carriers from BC/BS to Alpha for a period of twenty-four months, to commence October 1, 1981. The Union, by letter dated July 20, 1981, advised the District that the change to Alpha altered existing benefits, that Alpha's coverage was not the same or equal to the existing BC/BS policies and if a new collective bargaining agreement was not reached by October 1, 1981, the change would be considered a change in status quo, and as such a lock-out.

On August 31, 1981, the dispute over the new collective bargaining agreement was referred to a fact finder by the Pennsylvania Labor Relations Board (PLRB). The new school term began on September 8, 1981, and the Union members resumed working. On September 28, 1981, the Union advised the District that because of the change of insurance carriers effective October 1, 1981, the Union would consider its members locked out as of that date.[4] When the PLRB fact-finding period was over on October 23, 1981, the Union began its work stoppage at 4:00 p.m., and did not return to work until a new agreement was reached on December 17, 1981.

After the new agreement was in place, the Union filed a grievance, claiming that the change in insurance carriers violated the collective bargaining agreement because Alpha's coverage was not equal to or greater than BC/BS.[5] A three member panel of arbi-

---

[3] Alpha is a form of self-insurance with certain stop loss coverage and conversion privileges.

[4] 43 P.S. §1101.1002 prohibits a Union from engaging in a work stoppage during the pendency of the PLRB's fact-finding period.

[5] The new collective bargaining agreement contained a special provision referring the dispute over Alpha to arbitration.

trators issued its decision on August 3, 1982, sustained the grievance and ordered the District to replace Alpha with a carrier providing coverage equal to or greater than BC/BS.

Petitioners applied for unemployment compensation as token representatives of all the members of the Union.[6] The Office of Employment Security determined that Petitioners were eligible for the waiting week ending October 31, 1981, and ineligible under §402(d) for the week ending November 7, 1981. After extensive hearings on appeal, the referee held Petitioners ineligible for both weeks, under §402(d).[7] The Board affirmed the referee, finding that Alpha's coverage was equivalent to BC/BS, and so not a change in status quo.

We must decide whether the Board's findings of fact are consistent with each other and with the conclusions of law and can be sustained without a ca-

---

[6] Within the Union were several classes of teachers, each of which was represented by a token claimant. Our resolution of this case does not rely upon the different status of the classes, therefore we will not address each class separately.

[7] An employee shall be ineligible for compensation for any week—

(d) In which his unemployment is due to a stoppage of work, which exists because of a labor dispute (other than a lock-out) at the factory, establishment or other premises at which he is or was last employed: Provided, That this subsection shall not apply if it is shown that (1) he is not participating in, or directly interested in, the labor dispute which caused the stoppage of work, and (2) he is not a member of an organization which is participating in, or directly interested in, the labor dispute which caused the stoppage of work, and (3) he does not belong to a grade or class of workers of which, immediately before the commencement of the stoppage, there were members employed at the premises at which the stoppage occurs, any of whom are participating in, or directly interested in, the dispute.

pricious disregard of competent evidence.[8] The question of whether a work stoppage is a strike or lock-out is a mixed question of fact and law, *Philco Corporation v. Unemployment Compensation Board of Review*, 430 Pa. 101, 242 A.2d 454 (1968), and therefore reviewable by this Court.

Under §402(d) of the Law, an employee is ineligible for unemployment compensation for any week "[i]n which his unemployment is due to a stoppage of work, which exists because of labor dispute (other than a lock-out) at the factory, establishment or other premises at which he is or was last employed." The test for determining whether a work stoppage is the result of a lock-out or a strike was set forth in *Vrotney Unemployment Compensation Case*, 400 Pa. 440, 163 A.2d 91 (1960), and refined in *Philco*.

Under the *Vrotney/Philco* test, the analysis which the Board and this Court must use is:

> Have the employees offered to continue working for a reasonable time under the pre-existing terms and conditions of employment so as to avert a work stoppage pending the final settlement of the contract negotiations; . . .

> Since the purpose of our unemployment compensation system is to compensate an individual when work has been denied him through no fault of his own, logically the test of whether a work stoppage resulted from a strike or a lock-out requires us to determine which side, union or management, first refused to continue operations under the status quo after the contract had

---

[8] Where the party with the burden of proof does not prevail before the Board, our scope of review is limited to these inquiries. *Pennsylvania State Police v. Unemployment Compensation Board of Review*, 79 Pa. Commonwealth Ct. 46, 468 A.2d 533 (1983).

technically expired, but while negotiations were continuing. *Local 730, United Association of Journeymen and Apprentices of the Plumbing and Pipe-Fitting Industry v. Unemployment Compensation Board of Review,* Pa. , , 480 A.2d 1000, 1002-1003 (1984) (quoting *Vrotney,* 400 Pa. at 444, 163 A.2d at 93, and *Philco,* 430 Pa. at 103, 242 A.2d at 455).

Here, Petitioners assert that the District's unilateral change of insurance carriers disturbed the status quo, and so constituted a lock-out.

The question we must first address is whether the Union had a duty to pursue a grievance for the health insurance dispute as a prerequisite to its claiming a lock-out. A Union has the *right* to resort to the grievance procedure for alleged contract violations which take place during the interim period under the extension of the terms of the expired collective bargaining agreement. *Pennsylvania Labor Relations Board v. Williamsport Area School District,* 486 Pa. 375, 406 A.2d 329 (1979). The existence of this right does not necessarily lead to the conclusion that the Union has a *duty* to utilize this remedy in the face of an imminent change in status quo. To impose such a requirement would, in effect, eliminate the lock-out exception to §402(d), because the grievance procedure is time consuming and in most cases a new collective bargaining agreement would be reached before the grievance procedure would be finished.

Additionally, if an employer knows that the Union has a duty to grieve before it can claim a lock-out, then the employer could use changes in contract benefits to manuever the Union into settling for less favorable terms in the new collective bargaining agreement, something the lock-out exception was designed to prevent.

Therefore, we hold that, for unemployment compensation purposes, the filing of a grievance is not a condition precedent to a Union's claim of lock-out during the interim bargaining period, when the employer and Union are working under an extension of the terms of the expired agreement.

The main inquiry we must make is whether the District was able to make such a change in an employee benefit during the interim negotiation period. The old agreement required the District to maintain benefits equal to or greater than BC/BS. From this language the District inferred that it had the ability to change from BC/BS to another carrier, so long as the benefits provided by the new carrier were at least equal to BC/BS. Neither party contests the ability of the District to change to an equal carrier during the regular term of the agreement. But when the agreement expired, and its terms and conditions were extended for the purpose of allowing work to continue during negotiations, a "status quo" was established which was more restrictive on the parties' ability to change *any* of the conditions, even though the expired agreement had provided for such changes.[9] Even the smallest of changes is considered a disruption of the status quo. *See Chichester School District v. Unemployment Compensation Board of Review*, 53 Pa. Commonwealth Ct. 74, 415 A.2d 997 (1980).

Two of our Supreme Court's cases illustrate the extent of this restriction.

In *Fairview School District v. Unemployment Compensation Board of Review*, 499 Pa. 539, 454 A.2d 517 (1982), the union was working under an extension of

---

[9] We reject the District's contention that the decision to change insurance carriers is inherently managerial. Such a decision affects the wages and terms of employment. *See* 43 P.S. §1101.702.

its old collective bargaining agreement while negotiations were underway. The new school year began, and the teachers received their regularly scheduled biweekly paychecks. The checks were computed on the basis of the salary matrix used the prior school year, but did not include a step-up in pay based on the teachers' additional year of service, an increase which would have been applicable under the terms of the old agreement.

The union filed a grievance and commenced a work stoppage, claiming a lock-out because of the District's failure to implement the pay increase. The Unemployment Compensation Board granted benefits and this Court affirmed. On appeal the Pennsylvania Supreme Court reversed, holding that the District's refusal to step up the salaries did not constitute a disruption of the status quo, and therefore the work stoppage was a strike, not a lock-out.

The Court's rationale in *Fairview* was taken from two cases from other jurisdictions which had addressed a similar problem. The Supreme Court of Maine, in *M.S.A.D. No. 43 Teachers' Association, v. M.S.A.D. No. 43 Board of Directors,* 432 A.2d 395 (Me. 1981), held that during the interim period between the expiration of a contract, the status quo should be maintained as if the existing conditions were frozen rather than to give effect to a built-in wage escalator. To say that the status quo must be maintained during negotiations does not mean that the status quo shall include a *change.* Maintenance of the status quo is merely another way of stating that the parties must continue the relationship *as it existed* at the expiration of the old contract. *See also In the Matter of the Board of Cooperative Educational Services of Rockland County v. New York State Public Employment*

*Relations Board,* 41 N.Y. 2d 753, 395 N.Y.S. 2d 439, 363 N.E. 2d 1174 (1977).

In *Fairview,* the Court held that to require the salary increases contained in the expired contract would *change* the existing relationship in the context of the terms and conditions subject to the very negotiations sought to be fostered. The underlying rationale for the status quo requirement is to allow the parties to continue working and negotiating on an equal basis in good faith. Alteration of any condition of employment may be used as leverage in the negotiation process, to the disadvantage of the other party. Therefore, the Court in *Fairview* reinstated the referee's denial of unemployment compensation benefits, because the work stoppage was not the result of a lockout but was a strike.

The other Pennsylvania Supreme Court case addressing the strike/lock-out issue held that even a change made by the employer which is beneficial to the union members will be considered to be a disruption of the status quo. *Local 730,* Pa. , 480 A. 2d 1000 (1984). The Court in *Local 730* refused to inject a good faith element into the *Vrotney/Philco* status quo test, expressing its concern about the need to avoid complicating the Board's compensation decision with requirements of ascertaining the good faith or justification of a party's alteration of existing conditions. After *Local 730,* all the Board must decide is the simple factual question of which party first departed from the terms of the agreement as they existed when the agreement expired.

Applying the Supreme Court's rationale to the instant case, we must reverse the decision of the Board. There is no dispute that the District changed insurance carriers during the interim period covered by the extended terms of the expired agreement. Wheth-

er the District would have been able to make such a change under the normal term of the contract is not relevant. The only question the Board needed to resolve is who first departed from the relationship as it existed at the time the agreement expired. Therefore, the Board did not need to inquire into the relative merits of the coverage of two insurance plans. We do not believe it necessary for the Board to act as a grievance panel in addition to its function as arbiter of compensation eligibility.

Once the Board found that the District had changed the insurance carrier during the interim period, its inquiry was completed. The conclusion that the work stoppage was a strike was therefore erroneous. We hold that the District engaged in a lock-out by its alteration of the insurance carriers during the negotiating period following the expiration of the old collective bargaining agreement.[10]

Accordingly, the decision of the Board denying benefits under §402(d) of the Law is reversed, and the case is remanded for computation of benefits.

Judge COLINS dissents.

### ORDER

AND Now, January 22, 1985, the decision of the Unemployment Compensation Board of Review in the above-captioned matter is reversed.

---

[10] Because of our disposition of this case on the initial status quo question, we do not address the impact of our decision in *Norwin School District v. Unemployment Compensation Board of Review*, 80 Pa. Commonwealth Ct. 67, 471 A.2d 904 (1984), *petition for allowance of appeal granted*, (71 W.D. App. Dkt. 1984, September 20, 1984), which affirmed the Board's decision that a change from BC/BS to Alpha was a change in status quo, and therefore a lockout.