514 A.2d 668

Kenneth E. Hoffman, Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent.

Argued March 13, 1986, before Judges COLINS and PALLADINO, and Senior Judge KALISH, sitting as a panel of three.

*Stephen L. Barsotti,* for petitioner.

*Jonathan Zorach,* Associate Counsel, with him, *Charles G. Hasson,* Acting Deputy Chief Counsel, for respondent.

*Edmund M. Carney, Rose, Schmidt, Chapman, Duff & Hasley;* Of Counsel: *Jeannette Fisher-Garber,* for intervenor, Joy Manufacturing Company.

OPINION BY JUDGE PALLADINO, September 3, 1986:

Kenneth Hoffman (Claimant) is a token claimant seeking review of an order of the Unemployment Compensation Board of Review (Board) denying benefits to himself and similarly situated members of the International Association of Machinists and Aerospace Workers, Local 1842 (Union). The Board reversed the referee's award of benefits, and determined that Claimant and other union members were precluded by Section 402(d)

of the Unemployment Compensation Law (Act)[1] from receiving benefits. Section 402(d) of the Act bars a claimant from compensation for any week in which his unemployment was due to a stoppage of work existing because of a labor dispute, other than a lockout, at the factory, establishment, or other premises at which the claimant is or was last employed.[2]

The Union and intervenor-employer, Joy Manufacturing Company (Employer), were parties to a collective bargaining agreement (prior contract) which expired on August 6, 1983. The Union represented employees at several mining machinery manufacturing plants in Franklin, Pennsylvania, owned by Employer. The parties bargained from June 7, 1983, until August 1, 1983, without a new agreement being formulated.

A formal strike was voted on, assented to, and commenced as of midnight, August 6, 1983 and pickets were set up. After four weeks, Employer began dismantling the plant and relocating the manufacturing work to other plant locations and subcontractors in Pennsylvania, West Virginia, Virginia, Illinois, Colorado, New Hampshire, and Michigan.

On October 19, 1983, a negotiation session was held at which the Union made offers to resume work either under a new one-year contract based on the terms and conditions of the prior contract or under the terms of the prior contract on a day-to-day basis while negotiations continued. These offers were rejected by Employer. The strike was finally settled November 20, 1983.

Claimant seeks benefits covering the compensable week ending October 29, 1983, and subsequent there-

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended,* 43 P.S. §802(d).

[2] *See* 43 P.S. §802(d).

to,[3] alleging that the Union's offer to return to work and Employer's subsequent rejection of that offer had sufficed to convert the strike into a lockout for the purposes of Section 402(d) of the Act. The referee awarded benefits and the Board reversed. Claimant now appeals to this Court. We affirm the Board's order.

The question of whether the work stoppages resulted from a strike or lockout is a mixed question of law and fact subject to this Court's review. *Bishop v. Unemployment Compensation Board of Review,* 90 Pa. Commonwealth Ct. 553, 496 A.2d 110 (1985). When a claimant's employment is interrupted by a work stoppage arising from a labor dispute, the claimant bears the burden of proving that a lockout caused the stoppage. *Id.*[4] Where the employees have struck first, a claimant may still show that the strike was precipitated by an employer's unilateral change in the status quo or may show that the employer's subsequent change in status quo converted the strike into a lockout for purposes of Section 402(d) of the Act. *See Norwin School District v. Unemployment Compensation Board of Review,* 80 Pa. Commonwealth Ct. 67, 471 A.2d 904 (1984), *aff'd,* 510 Pa. 255, 507 A.2d 373 (1986); *High v. Unemployment Compensation Board of Review,* 67 Pa. Commonwealth

---

[3] On August 24, 1983 the Office of Employment Security issued a determination denying benefits on the basis that the initial work stoppage was a strike. This determination was affirmed by a referee and the Board. No appeal was taken from that decision to this Court.

[4] Because Claimant had the burden of proof and did not prevail before the Board, our scope of review is limited to determining whether the Board's findings of fact are consistent with each other and with the conclusions of law and can be sustained without a capricious disregard of competent evidence or whether an error of law was made by the Board. *Pennsylvania State Police v. Unemployment Compensation Board of Review,* 79 Pa. Commonwealth Ct. 46, 468 A.2d 533 (1983).

Ct. 472, 447 A.2d 701 (1982), *aff'd,* 505 Pa. 379, 479 A.2d 967 (1984); *Unemployment Compensation Board of Review v. Sun Oil Co.,* 476 Pa. 589, 383 A.2d 519 (1978), *appeal dismissed,* 440 U.S. 977 (1979).

The determination as to which party was responsible for the initial disruption of the status quo does not end the inquiry. Determinations of benefit eligibility under Section 402(d) of the Act should be made on a week-by-week basis. *See Norwin,* 80 Pa. at 75, 507 A.2d at 382; *High,* 505 Pa. at 383, 479 A.2d at 969. *Compare Westinghouse Electric Corporation v. Unemployment Compensation Board of Review,* 187 Pa. Superior Ct. 403, 413-14, 144 A.2d 679, 684 (1958); *Vrotney Unemployment Compensation Case,* 400 Pa. 440, 163 A.2d 91 (1960). The distinction between a strike and a lockout is judged by reference to whether the union or the employer first refused to continue the employment relationship under the terms and conditions of the employment as they existed just before the expiration of the prior collective bargaining agreement. A strike may be converted to a lockout for purposes of Section 402(d) of the Act when an employer refuses to accept a union's offer to work for a reasonable period of time under the status quo conditions pending negotiation of a new contract. *See High,* 505 Pa. at 382-83, 479 A.2d at 968-69; *High,* 67 Pa. Commonwealth Ct. at 477-78, 447 A.2d at 704-05; *Odgers v. Unemployment Compensation Board of Review,* 89 Pa. Commonwealth Ct. 439, 450, n.10, 492 A.2d 808, 814, n.10 (1985).

In the case at bar it is undisputed that the Union first refused to continue working under the status quo when it went out on strike at the expiration of the prior contract on August 6, 1983. The Board found, and its findings are supported by substantial evidence in the record, that Employer maintained partially finished work in the plant for approximately four weeks after the

commencement of the strike in the hopes that the labor dispute would be resolved during that period. During that four week period, work was available to the striking employees on a day-to-day basis. When no resolution was forthcoming in that period of time, Employer made an economic decision to transfer the partially completed work to other plants for completion. Once the work was shipped out, it was not possible for Employer to recall it and Employer required a minimum of two days start-up time to resume operations at the plant. The Board also found that Employer rejected the Union's October 19, 1983 offer to return to work on a day-to-day basis because at that time it would not have been practical for Employer to operate its plant on a day-to-day basis.

Claimant argues that the rejection by Employer of the Union's offer constitutes a refusal by Employer to permit work to continue for a reasonable time under the status quo, and, therefore, converts the strike into a lockout under the principles enunciated in *Vrotney, High,* and *Norwin.* We disagree.

In view of the fact that almost three months elapsed from the time that the Union went out on strike until it offered to resume work under the status quo, and that Employer found it economically necessary to reassign the work in progress during the strike, we do not believe that the Union's offer to resume work on a day-to-day basis was an offer to work for a reasonable time. We have held that what constitutes a "reasonable time" varies depending on the particular circumstances of each case. *McKeesport Area School District v. Unemployment Compensation Board of Review,* 40 Pa. Commonwealth Ct. 334, 397 A.2d 458 (1979) (holding that day-to-day extension is not unreasonable for teachers) citing *Hershey Estates v. Unemployment Compensation Board of Review,* 400 Pa. 446, 163 A.2d 535 (1960) (holding that day-to-day extension was not rea-

sonable for employees involved in a service industry). We conclude that a day-to-day extension of the status quo would not be reasonable under the facts of this case as found by the Board and enunciated above.

Additionally, based upon our review of the record, we conclude that the Union's offer to resume work for a period of one year was not an offer to continue the status quo pending negotiations; rather, it was an offer for a new one-year contract on the same terms and conditions as the prior contract. As such, this offer did not satisfy the Union's burden of proving that it offered to continue working under the status quo for a reasonable period pending final settlement of negotiations. *See Bishop*, 90 Pa. Commonwealth Ct. at 559, 496 A.2d at 113 (1985).

Accordingly, we affirm the Board's order denying benefits.

#### ORDER

AND NOW, September 3, 1986, the order of the Unemployment Compensation Board of Review at No. B-240432, dated May 17, 1985, is affirmed.

***

DISSENTING OPINION BY JUDGE COLINS:

I respectfully dissent.

The employer argues that its decision to transfer work from the plant to other locations during the pendency of the strike was economically and tactically justified. However, no good faith or justification exceptions to the lockout rule exist in Section 402(d) of the Act as written. Case authority interpreting the Act's status quo doctrine has refused to allow such justification defenses.

Our Supreme Court has rejected the interjection of good faith or justification elements into the status quo test. Its rationale is that the Board's compensation decisions will be unnecessarily complicated by the need to

ascertain the good faith or justification underlying each party's departure from the status quo. *See Grandinetti v. Unemployment Compensation Board of Review,* 87 Pa. Commonwealth Ct. 133, 486 A.2d 1040 (1985) (*citing Local 730, United Association of Journeymen and Apprentices of the Plumbing and Pipe-fitting Industry v. Unemployment Compensation Board of Review,* 505 Pa. 480, 480 A.2d 1000 (1984)). The test is an objective one, and departure from willingness to resume work under the status quo for any reason is all that need be shown. Evidence as to justification or good faith is legally irrelevant. *Compare* Comment, "Unfair Labor Practice and Contract Aspects of an Employer's Desire to Close, Partially Close, or Relocate Bargaining Unit Work," 24 Duq. L. Rev. 285-308 (1985).

The majority errs in allowing the outcome of this case to be governed by evidence of the employer's economic justification for its tactic of relocating plant facilities. It tries to sidestep the import of its rationale by finding the Union's offer to resume work on a day-to-day basis was not an offer to work for a reasonable time under the circumstances of the case.[1] Even though the offer to return to work was made after three months, this alone cannot suffice to deny the Union benefits, because under *Norwin School District v. Unemployment Compensation Board of Review,* 80 Pa. Commonwealth Ct. 67, 471 A.2d 904 (1984), *aff'd,* 510 Pa. 255, 507 A.2d 373 (1986), determinations of eligibility must be made on a week by week basis. What makes the offer unreasonable in the eyes of the majority must, therefore, be the fact that it was not economically practical for the employer to resume operations without a guarantee that no more work stoppages would occur.

---

[1] The Board made no such finding of fact.

Such an approach will lead to Board hearings and findings of fact on issues of good faith and economic justification for refusal to accept offers to resume work under the status quo. The better approach is to follow *Grandinetti* and *Local 730* and inquire whether the Union offered to resume operations under the terms and conditions of the expired contract while negotiations were still continuing, and whether the employer refused that offer. Asking why the employer refused that offer, or whether that offer was reasonable under the circumstances, invites long, complicated hearings before the Board. We should follow the simpler approach, exemplified by cases like *McCormick Dray Lines, Inc. v. Unemployment Compensation Board of Review*, 74 Pa. Commonwealth Ct. 181, 459 A.2d 74 (1983), and eschew the more complicated approach espoused by the majority.