522 A.2d 1180

Portec, Inc., RMC Division, Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent.

Argued October 7, 1986, before Judges MACPHAIL, COLINS and PALLADINO, sitting as a panel of three.

*Larry G. Hall,* with him, *James K. Perkins, Matkov, Griffin, Parsons, Salzman & Madoff, Albeon G. Anderson, Jr.,* and *Robert L. Garber,* for petitioner.

*Jonathan Zorach,* Assistant Counsel, with him, *James K. Bradley,* Assistant Counsel, *Paul E. Baker,* Acting Deputy Chief Counsel, for respondent.

OPINION BY JUDGE COLINS, March 17, 1987:

Portec, Inc., RMC Division (petitioner or employer) appeals from an order of the Unemployment Compensation Board of Review (Board) awarding benefits to a lead token claimant (claimant) and similarly situated members of the United Steel Workers of America, Local 3515 (union) who are employed by petitioner. The Board affirmed the referee's award of benefits and agreed that claimant and other union members were not precluded by Section 402(d) of the Unemployment Compensation Law (Act), Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended,* 43 P.S. §802(d), from receiving benefits. Section 402(d) of the Act bars a claimant from compensation for any week in which his unemployment was due to a stoppage of work

existing because of a labor dispute, other than a lockout by the employer.

The union and the petitioner were parties to a three-year labor-management agreement (contract) which expired at midnight on October 31, 1983. Prior to the expiration date, a series of twelve negotiating sessions were held without a new agreement being formulated.

At the first negotiating session, held on September 27, 1983, the petitioner asked for concessions in any proposed contract and explained that it was the petitioner's goal to reduce costs by twenty percent in order that it might be more competitive. Subsequently, the union submitted proposals and asked for a wage increase. At no time during the course of these negotiating sessions, held prior to the expiration of the contract, did the union indicate that it would grant any concessions to the employer. At the suggestion of the union, the parties agreed to extend the expiration of the contract by one week until November 6, 1983, while work continued under the same terms and conditions of the contract and negotiations continued. At a negotiating session on November 4, 1983, the union withdrew its demands for a wage increase and other benefits and indicated its willingness to enter into a new agreement under the same terms and conditions as the old contract with respect to those already employed. The union was willing to grant concessions regarding any newly-hired employees but was unwilling to agree to any concessions for existing employees.

On November 5, 1983, the employer presented a final offer which required wage reductions, restrictions in vacation entitlement and bonuses, a change in the hospitalization and medical insurance carrier, the elimination of a thirteen-week special payment to retirees, the deletion of optical insurance and revised grievance

procedures. At a membership meeting on November 6, 1983, the union rejected the employer's final proposal.

The union employees reported for work as scheduled on November 7, 1983, and, thereafter, continued to work, under the terms and conditions of the expired contract while negotiations continued. The employer was advised by the union that its members would continue to do so until a new agreement was reached. The parties did not enter into a new extension agreement even though the union was willing to do so, and the employees were permitted to continue working under the expired terms and conditions of the prior contract.

On November 17 and 18, 1983, negotiating sessions were held and no progress was made in resolving the differences between the parties. The employer, at the November 18, 1983 negotiating session, informed the union that, as of November 21, 1983, it was putting into effect the terms and conditions of its final proposal and that any employees working on and after that date would be working under the terms and conditions of the employer's final offer.

At the November 18, 1983, negotiating session and periodically thereafter, the union offered to continue working for any length of time agreeable to the employer under the terms and conditions of the expired contract while negotiations continued, but this offer was not acceptable to the employer.

On November 21, 1983, the members of the union held a meeting outside the employer's plant and expressed to a management representative their desire to continue working while negotiations continued. When no response was received from the employer, the union members refused to report to work and established a picket line.

Our Supreme Court has interpreted the provisions of Section 402(d) of the Act in the landmark decision of

*Vrotney Unemployment Compensation Case,* 400 Pa. 440, 163 A.2d 91 (1960). The Supreme Court held that when a contract has, in fact, expired and a new agreement has not yet been negotiated, the question of whether the work stoppage is the result of a lockout or a voluntary strike must be decided by determining which party first refused to maintain the status quo during the course of negotiations. Under the facts of *Vrotney,* the Supreme Court determined that the employer had first refused to maintain the status quo so that the resulting work stoppage, accordingly, constituted a lockout and that the Section 402(d) disqualification for unemployment compensation benefits did not apply.

In the instant case, the union repeatedly advised the employer of its willingness to maintain the status quo. It is apparent from the record that in the very short interlude between the expiration of the old contract and the commencement of the lockout by the employer, the union exhibited a willingness not only to negotiate in good faith but also withdrew its demands for certain provisions in its proposed contract. It is also apparent from the record that there was substantial progress in the negotiations. However, the employer unilaterally determined that the negotiations were not progressing properly and, consequently, implemented its proposed changes without the consent of the union. It is apparent from the record *sub judice* that the employer's actions constituted a breach of the status quo, in violation of *Vrotney.*

The employer argues that *Vrotney* is inapplicable here because this case involves a so-called "give-back," that is, a situation where the employer seeks to reduce wages and benefits, not merely to negotiate over the amount of any increase. Due to depressed conditions in the Commonwealth's "smoke stack" industries, it is not uncommon for an employer to seek reductions in em-

ployee wages and benefits. Hence, previously, if the status quo was maintained, union members would be the burdened parties, for they would be foregoing anticipated wage and benefit increases. Now, however, as employer indicates, if the status quo was maintained on a daily, weekly, or yearly basis, the union would have no incentive to accede to the employer's demands. This argument misses the point. It is not within the purview of the Board or this Court to be used implicitly as part of the collective bargaining process. Rather, it is our duty to see that the law is fairly administered in accordance with the legislature's intent. Our Supreme Court has determined that *Vrotney* is the law and that *any* change in the status quo by the employer constitutes a lockout. This Court's decision in *Hoffman v. Unemployment Compensation Board of Review*, 100 Pa. Commonwealth Ct. 264, 514 A.2d 668 (COLINS, J., dissenting), *petition for allocatur pending*, No. 514 W.D. Allocatur Docket (1986), has been the only exception from the rule established in *Vrotney*. However, in *Hoffman*, this Court based its decision on its finding that the union's offer to resume work on a day-to-day basis was not an offer to work for a reasonable time under the unique circumstances of the case.

Thus, we decline to adopt the employer's argument that since maintenance of the status quo would be arguably beneficial to the union, we should not find that the unilateral change by employer constituted a lockout. Even if we were inclined toward employer's argument, our status as an intermediate appellate court precludes our deviating from the rule announced in *Vrotney*.

Thus, the actions of the employer must be deemed a lockout and benefits cannot be denied under the provisions of Section 402(d) of the Act.

Accordingly, we affirm the order of the Board.

ORDER

AND NOW, this 17th day of March, 1987, the order of the Unemployment Compensation Board of Review, No. B-236811, dated December 14, 1984, is hereby affirmed.