OPINION
On May 1, 1996, Todd M. Anderson and twenty-nine other named persons ("claimants") filed applications with the Ohio Bureau of Employment Services ("OBES") for determination of benefit rights.[1] The claimants had been hourly employees of J.S. MacLean Company, Inc. ("MacLean") and were members of Local #2077 of the United Brotherhood of Carpenters and Joiners of America ("union"). A collective bargaining agreement between the union and MacLean had been in effect on May 1, 1993 and was to expire on April 30, 1996. In March 1996, the parties began negotiations for a new contract. At approximately noon on April 30, 1996, MacLean submitted its best and final offer. The union membership rejected this offer. MacLean informed the union that if there was no contract, there would be no work.
The claimants showed up to work the next morning, May 1, 1996, but the gates were locked and the claimants were turned away. The parties met with a federal mediator later that day, and MacLean informed the union that the claimants could return to work under MacLean's best and final offer while negotiations continued. The union membership voted not to return to work under these circumstances and elected to go on strike.
A hearing was held before an OBES hearing officer pursuant to R.C. 4141.28(D)(1) in order to determine whether or not the claimants' unemployment was due to a labor dispute. On June 25, 1996, the hearing officer issued a decision finding the claimants were entitled to benefits since their unemployment was due to a lockout. MacLean filed an application for appeal before the Unemployment Compensation Board of Review ("board"). The appeal was allowed, and the board directed that a further hearing be held. No additional testimony was presented at the second hearing.
On June 5, 1997, the board issued its decision reversing the first hearing officer's decision. The board found that the claimants had initially been locked out on the morning of May 1, 1996 but that the lockout was later converted into a strike. The board concluded that the claimants' unemployment was due to a labor dispute other than a lockout. Therefore, pursuant to R.C.4141.29(D)(1)(a), the board determined the claimants were not entitled to benefits.
The claimants appealed the board's decision to the Franklin County Court of Common Pleas. On November 24, 1998, the common pleas court rendered a decision finding the board's decision was not unlawful, unreasonable or against the manifest weight of the evidence. Accordingly, the board's decision was affirmed. An entry was journalized on February 4, 1999. The claimants (hereinafter "appellants") have appealed to this court, assigning the following error for our consideration:
 The Court below erred in finding that Appellants converted a lockout into a strike and were thus disqualified from receiving unemployment benefits under O.R.C. § 4141.29(D)(1)(a).
We begin with the standard of review. R.C. 4141.28(O)(1) states that any interested party may appeal from the board's decision to the court of common pleas, and the court of common pleas must reverse or modify such decision if it finds the decision was unlawful, unreasonable or against the manifest weight of the evidence. This same standard applies to this court's review. In Tzangas, Plakas Mannos v. Ohio Bur. of Emp. Serv.
(1995), 73 Ohio St.3d 694, 696, the Supreme Court stated that appellate courts may reverse a board's decision only if it is unlawful, unreasonable or against the manifest weight of the evidence. In so reviewing, however, the board's role as factfinder is intact, and the fact that reasonable minds may reach different conclusions is not a basis for reversing the board's decision. Id. at 697.
The main issue in this appeal involves a question of law, specifically, whether or not appellants' unemployment was due to a labor dispute other than a lockout. R.C. 4141.29(D) states, in pertinent part:
 (D) * * * no individual may * * * be paid benefits under the following conditions:
 (1) For any week with respect to which the administrator finds that:
 (a) The individual's unemployment was due to a labor dispute other than a lockout * * * and for so long as the individual's unemployment is due to such labor dispute. * * *
In determining whether or not appellants were entitled to benefits under R.C. 4141.29(D)(1)(a), the board indicated that the issue was whether a lockout could be converted into a labor dispute other than a lockout. The board found appellants had originally been locked out by MacLean but that MacLean subsequently retreated from this position and suggested appellants return to work under its best and final offer. The board concluded that when the union voted not to return to work under this condition and did not offer to continue to work under the terms of the expired collective bargaining agreement, the reason for appellants' unemployment was no longer a lockout but was a labor dispute other than a lockout. For the reasons that follow, we find the board's decision was unlawful.
The Supreme Court of Ohio has set forth a test to determine whether, for purposes of R.C. 4141.29(D)(1)(a), unemployment is due to a lockout or a labor dispute other than a lockout. The so-called "status-quo" test determines whether the work stoppage is the responsibility of the employer or the employee. Bays v. Shenango Co. (1990), 53 Ohio St.3d 132, 134. The test requires the following questions be answered: once a collective bargaining agreement has expired and a new agreement has not been negotiated, have the employees offered to continue working for a reasonable time under the preexisting terms and conditions of employment pending final settlement of contract negotiations and has the employer agreed to permit work to continue for a reasonable time under such preexisting conditions pending further negotiations. Id., quoting Erie Forge SteelCorp. v. Unemp. Comp. Bd. of Review (1960), 400 Pa. 440, 443-445,163 A.2d 91, 93-94. If the employer refuses to so extend the previous contract and maintain the status quo, the resulting work stoppage constitutes a lockout. Bays at 134-135.
In Bays, the Supreme Court stated that the status-quo test requires that the actions of the employer and the union be scrutinized in order to ascertain whether the parties sought to maintain the status quo. Id. at 135. Citing another Pennsylvania case, the Supreme Court stated that the test of whether a work stoppage resulted from a strike or a lockout requires a determination of which side first refused to continue operations under the status quo after the contract had expired but while negotiations were continuing. Id., quoting Philco Corp. v. Unemp.Comp. Bd. of Review (1968), 430 Pa. 101, 103, 242 A.2d 454, 455. An employer deviates from the status quo if it refuses to allow work to continue for a reasonable time under the existing terms and conditions of employment while negotiations continue. Bays at 135. Applying these principles to the facts in the case at bar, we conclude that the board's decision finding appellants' unemployment was due a labor dispute other than a lockout was unlawful.
The facts as found by the board are as follows. During the negotiations prior to expiration of the collective bargaining agreement, neither party offered to continue operating in accordance with the existing collective bargaining agreement beyond the contract's expiration date. The last effective day of the contract was April 30, 1996. At noon on April 30, 1996, MacLean submitted its best and final offer which included pay raises. The union membership rejected this offer. The union representative informed MacLean that the union wanted to come back to work the following day, and it wanted to schedule a meeting with a federal mediator on such day. MacLean informed the union that if there was no contract, there would be no work. The union was unable to relay this information to its membership, the workers showed up at work the following day, May 1, 1996, the gates were locked, and the workers were turned away.
That same day, May 1, 1996, the union and MacLean met with a federal mediator. The mediator told MacLean that the union had agreed to return to work. MacLean relayed that it would accept the union's offer, and work was available under the terms of MacLean's best and final offer despite the fact that a new contract had yet to be negotiated. Later that afternoon, the union membership voted not to return to work under the terms of MacLean's final offer and elected to go on strike.
The above facts alone support our conclusion that the board's decision was unlawful. However, we note that the following testimony was elicited from Michael E. Ulrich, the union's business representative, as to what occurred after the union rejected MacLean's best and final offer on the evening of April 30, 1996:
 Q. Did you convey to the company that you were willing to continue to work and operate according to the terms and conditions of the expired contract?
 A. Not in so many words. I had told them that we had rejected the company's offer. The Federal Mediator had requested that we not take any action, and that we give him a chance to reach a meeting and continue bargaining, and that we would be at work. I didn't characterize it as a contract.
 Q. Well, what was the expectations of the union men that they were going to go back to work the next day?
 A. The expectation was that they would be paid under the old contract since we had rejected their offer of a new contract.
(See June 17, 1996 hearing Tr. at 83-84.)
The above evidence shows that under the Bays status quo test, the cause of appellants' unemployment was a lockout. The test of whether a work stoppage resulted from a strike or a lockout requires a determination of which side first refused to continue operations under the status quo. Bays at 135. MacLean, in locking out appellants on the morning of May 1, 1996, first refused to continue operations under the status quo. MacLean had been told that despite appellants' rejection of MacLean's final offer, they wanted to come to work on May 1, 1996 and meet with a federal mediator. Appellants, albeit not expressly, did seek to maintain the status quo because they showed up to work on May 1, 1996 knowing no new contract had been negotiated. It is key underBays that the parties' actions be scrutinized to ascertain whether they sought to maintain the status quo. It is clear that appellants and the union sought to maintain the status quo and keep MacLean's business in operation. MacLean, however, took the position of "no work, no pay" and locked the worksite gates, posting guards.
The board essentially agreed with the analysis set forth above, but then determined that the lockout was subsequently converted into a strike, thereby precluding the availability of benefits. This conclusion was erroneous as a matter of law. Again, the key to determining whether a work stoppage resulted from a strike or a lockout is who first refused to continue operations under the status quo after the contract had expired.Bays at 135. Here, it was MacLean who first refused to continue operations under the status quo. The mere fact that MacLean, after the lockout, made the same offer that had been previously rejected by appellants does not somehow change what caused appellants' unemployment. Appellants did vote to strike, however, this was not the reason for appellants' unemployment. Rather, the reason for appellants' unemployment always remained the same MacLean made work available only under the terms of its best and final offer.
We note that the board relied upon certain Pennsylvania cases to support its conclusion that a lockout may be converted into a labor dispute other than a lockout. However, it is unnecessary to reach such a general issue because in the case at bar, no such conversion ever occurred. In the Pennsylvania cases, the reason the conversions were relevant was that such conversions affected the status quo. See Norwin School Dist. v. Belan (1985),507 A.2d 373; Hoffman v. Com., Unemployment Compensation Bd.
(1986), 514 A.2d 668. In the case at bar, we have no such conversion. It must be emphasized that the ultimate factor in determining whether benefits are available under R.C.4141.29(D)(1)(a) is the cause of the unemployment. In the case at bar, such cause was MacLean's refusal, at all times, to maintain the status quo. This refusal never changed. Hence, the cause of appellants' unemployment was and always remained a lockout. Therefore, appellants were entitled to benefits under R.C.4141.29(D)(1)(a).
In conclusion, the board's decision that appellants' unemployment was due to a labor dispute other than a lockout, and the subsequent denial of benefits was unlawful. Therefore, the common pleas court erred in affirming such decision. Accordingly, appellants' sole assignment of error is sustained.
Having sustained appellants' sole assignment of error, the judgment of the Franklin County Court of Common Pleas is reversed. This cause is remanded to the board for further proceedings consistent with this opinion.
Judgment reversed and cause remanded.
PETREE, J., concurs.
[1] A thirty-first person was later added as a claimant.