Joseph PERSICO, Petitioner,

v.

UNEMPLOYMENT COMPENSATION
BOARD OF REVIEW,
Respondent.

Donald VERNET, Petitioner,

v.

UNEMPLOYMENT COMPENSATION
BOARD OF REVIEW,
Respondent.

Commonwealth Court of Pennsylvania.

Argued March 19, 1998.

Decided April 9, 1998.

Frank J. Lucchino, Pittsburgh, for petitioner.

Richard J. Antonelli, Pittsburgh, for intervenor, Wheeling–Pittsburgh Steel Corporation.

Before PELLEGRINI and KELLEY, JJ., and RODGERS, Senior Judge.

RODGERS, Senior Judge.

In these consolidated appeals, Joseph Persico and Donald Vernet (Claimants) petition for review of two orders of the Unemployment Compensation Board of Review (Board) denying Claimants and approximately 41 other employees of Wheeling–Pittsburgh Steel Corporation (Employer) unemployment benefits pursuant to Section 402(d) of the Unemployment Compensation Law (Law).[1] We affirm.

The Office of Employment Security (OES) denied Claimants benefits under Section 402(d) of the Law.[2] Claimants appealed and the case was assigned to a referee. Following hearings, the referee affirmed the OES' determinations and denied Claimants' request to re-open the record. Claimants then appealed to the Board, which, by orders dated May 16, 1997, affirmed the decisions of the referee, adopting the referee's findings of fact and conclusions of law and denying Claimants' request for a remand.

The relevant Findings of Fact are summarized as follows. Claimants are members of United Steel Workers of America, Local 1187 (Union). As of September 30, 1996, the terms and conditions of Claimants' employment were governed by a 1994 collective bargaining agreement, which expired at 12:01 a.m. on October 1, 1996. The Union and Employer engaged in negotiations prior to the expiration of the contract but failed to reach an agreement. Employer specifically offered to allow Union members to continue working under the terms and conditions of the expired agreement. (Finding of Fact (FOF) # 11.) At no time either before or after expiration of the agreement did the Union offer to continue work or return to work without an agreement to institute a Defined Benefit Pension Plan. (FOF # 5.) Upon expiration of the agreement, the Union initiated a work stoppage. (FOF # 12.) Claimants did not report to work on or after October 1, 1996, because they had been participating in the work stoppage. (FOF # 13.)

Claimants filed petitions for review to this Court, which were consolidated by this Court's order dated November 13, 1997. On appeal,[3] Claimants argue they are entitled to benefits because Employer was the party to

---

1. Act of December 5, 1936, Second Ex.Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(d), which states that an employee shall be ineligible for compensation for any week in which his unemployment is due to a stoppage of work which exists because of a labor dispute, other than a lockout, at his last place of employment.

2. The OES issued two determinations in accordance with the Token Claim Agreement signed by the parties, naming Joseph Persico as Lead Token claimant and Donald Vernet as Token claimant. (Record Item No. 5.)

3. Our scope of review in an unemployment compensation appeal is limited to determining whether an error of law was committed, constitutional rights were violated, or whether necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704. *Peoples First National Bank v. Unemployment Compensation Board of Review*, 159 Pa.Cmwlth. 134, 632 A.2d 1014 (1993).

change the status quo upon expiration of the agreement.

■ Where unemployment is due to a work stoppage, a claimant's eligibility for compensation depends on whether the work stoppage is a strike or a lockout. *Vrotney Unemployment Compensation Case,* 400 Pa. 440, 163 A.2d 91 (1960). Where employees reject an offer to continue working under pre-existing terms and conditions, employees are engaged in a strike. *High v. Unemployment Compensation Board,* 67 Pa.Cmwlth. 472, 447 A.2d 701 (1982), *aff'd,* 505 Pa. 379, 479 A.2d 967 (1984). Where an employer will not permit employees to continue working under pre-existing terms and conditions, the work stoppage is a lockout. *Id.* The party who first changes the status quo after the contract expires is held responsible for the work stoppage. *Schulmerich Carillons, Inc. v. Unemployment Compensation Board,* 154 Pa.Cmwlth. 343, 623 A.2d 921 (1991), *petition for allowance of appeal denied,* 535 Pa. 642, 631 A.2d 1013 (1993). The issue of whether a work stoppage is a strike or a lockout is a mixed question of fact and law, subject to our review. *Hercules v. Unemployment Compensation Board of Review,* 146 Pa.Cmwlth. 77, 604 A.2d 1159 (1992).

Claimants first argue that Employer altered the status quo by refusing the Union's demand to reach agreement on a Defined Benefit Pension Plan. Claimants acknowledge that such a plan was not in existence under the terms of the 1994 agreement. In fact, Employer's Defined Benefit Pension Plan had been terminated in 1985, during Employer's bankruptcy proceedings. Claimants argue that the termination of the plan was not a condition of employment mutually agreed upon by the parties, but was a condition imposed upon the parties by the Bankruptcy Court. Claimants assert that the last freely negotiated agreement included a Defined Benefit Pension Plan and argue that the existence of this benefit must be considered as part of the status quo.

However, the status quo has been defined as the terms and conditions in effect at the expiration of the agreement. *All American Gourmet Co. v. Unemployment Compensation Board of Review,* 143 Pa. Cmwlth. 330, 598 A.2d 1351 (1991). See also *Vrotney,* wherein the court directed us to examine whether the employer has refused to "extend the expiring Contract and maintain the status quo." *Id.* at 444–445, 163 A.2d at 93–94. We find no authority for Claimants' assertion that the status quo includes terms and conditions of employment beyond those in effect under the most recent labor agreement.[4]

Claimants also argue that Employer changed the status quo by failing to mail eligibility cards pursuant to the agreement's Surviving Spouse Payment clause. Under the 1994 agreement, Employer was required to make scheduled payments to eligible spouses, which payments were due on each November 1st occurring during the term of the 1994 agreement, commencing November 1, 1994. In previous years, Employer had mailed out "applications" in August or September, but no "applications" were mailed in the fall of 1996.

■ The referee noted that this mailing was merely a method adopted by Employer to fulfill its obligations, but was not an act required by the agreement. More important, Claimants did not dispute the testimony of Richard Bowness, Employer's comptroller of payroll and benefits accounting, that all eligible persons had been paid the maximum amount of benefits provided by the agreement. Since Employer established that no payments were scheduled to be made in November of 1996, the Board properly concluded that Employer's failure to send out "applications" in 1996 did not violate the terms of the agreement or alter the status quo.

Claimants further contend that Employer changed the status quo by failing to send out vacation preference cards in 1996. Under the agreement, employees are entitled to vacation in a calendar year if they have accrued

4. In addition, the referee noted that no evidence or testimony was presented on this question at the hearing; the issue was first raised in the brief submitted to the referee by Union's counsel. Ac-

cordingly, there is no evidence of record that would support a finding that the status quo included a Defined Benefit Pension Plan.

one year of continuous service during that calendar year and have reported for work on or after December 18th of the previous year. Thus, Claimants would be eligible for vacation in 1997 if they reported to work on or after December 18, 1996. The agreement required Employer to mail vacation preference cards on or promptly after October 1 st of each year to employees entitled or expected to become entitled to take vacation in the following year. After cards were completed and returned, Employer's supervisors would review their needs and then meet with employees to resolve conflicts and complete vacation schedules.

Since the work stoppage had commenced as of the start of the business day on October 1, 1996, the language of the agreement regarding employees "expected to become entitled" to vacation does not apply. No employees met the eligibility requirements for vacation in 1997. As of October 1, 1996, no employees were available or expected to be available for the meetings required to finalize vacation schedules and, more important, there is no assertion that Employer attempted to limit the rights of employees to select their own vacation period.

Claimants also assert that continuing work was not available, citing Employer's cutbacks in inventory and equipment preparation. However, as the referee noted, the agreement guarantees employees pay for forty hours of work per week, regardless of whether work is available. (FOF # 4.) Accordingly, these assertions are not relevant to the issue of Claimants' entitlement to benefits.

█ Finally, Claimants argue that the Board erred in denying their request for a remand to submit additional evidence pursuant to 34 Pa.Code § 101.24(b). This section applies only in circumstances where a party did not attend a hearing, and all parties were present at the hearing before the referee in this appeal. Under 1 Pa.Code § 35.231, the record may be re-opened upon filing of a petition that clearly sets forth facts constituting grounds requiring re-opening of the proceedings. Claimants' request for remand was made by letter from Claimants' counsel (Record Item No. 11) which included no specific reason for the request and, therefore,

Claimants' request was properly denied by the Board.

Having reviewed the record, we conclude that the Board's findings are supported by substantial evidence and no error of law was committed. Accordingly, the orders of the Board are affirmed.

### ORDER

NOW, April 9, 1998, the orders of the Unemployment Compensation Board of Review, at Nos. B–361097 and B–361098, dated May 16, 1997, are affirmed.