**MINERS HOSPITAL OF NORTHERN CAMBRIA, Petitioner,**

v.

**UNEMPLOYMENT COMPENSATION BOARD OF REVIEW, Respondent.**

**MINERS HOSPITAL OF NORTHERN CAMBRIA, Petitioner,**

v.

**UNEMPLOYMENT COMPENSATION BOARD OF REVIEW, Respondent.**

**Konnie L. Senko ANNA, Representative Claimant, Petitioner,**

v.

**UNEMPLOYMENT COMPENSATION BOARD OF REVIEW, Respondent.**

**Mary K. SCHENK, Representative Claimant, Petitioner,**

v.

**UNEMPLOYMENT COMPENSATION BOARD OF REVIEW, Respondent.**

Commonwealth Court of Pennsylvania.

Argued March 14, 1995.

Decided May 3, 1995.

Calvin John Webb, II, for petitioner, Miners Hosp. of Northern Cambria.

Ronald A. Berlin, for petitioners Konnie L. Senko Anna and Mary K. Schenk, Representative Claimants.

Linda S. Lloyd, Asst. Counsel, for respondent.

Before DOYLE and NEWMAN, JJ., and RODGERS, Senior Judge.

RODGERS, Senior Judge.

Before this Court are the consolidated appeals of Mary K. Schenk, Konnie L. Senko Anna and approximately 111 other members of their union of hospital employees (Claimants) and Miners Hospital of Northern Cambria (Employer) from two decisions of the Unemployment Compensation Board of Review (Board). We affirm in part and reverse in part.

Claimants were unemployed for a three-week period during the course of a work stoppage at Employer's health care facility. Claimants were denied unemployment compensation benefits by the Office of Employment Security (OES) pursuant to Section 402(d) of the Unemployment Compensation Law (Law).[1] Claimants appealed and, following a hearing, the referee issued two decisions affirming the OES' determinations.[2]

---

1. Act of December 5, 1936, Second Ex.Sess., P.L. (1937) 2897, *as amended,* 43 P.S. § 802(d), which states that an employee shall be ineligible for compensation for any week in which his unemployment is due to a stoppage of work which exists because of a labor dispute, other than a lockout, at his last place of employment.

2. A Representative Appeal Agreement was reached in December, 1993, stating that claimants Mary K. Schenk and Konnie L. Senko Anna would be the representative claimants whose determinations would be applicable as to the benefit rights of all employees included in the agreement.

Claimants then appealed to the Board which issued two decisions and orders, affirming in part and reversing in part the decisions of the referee. The Board's relevant findings of fact are summarized as follows.

Claimants worked under a collective bargaining agreement which expired on November 19, 1992 at 12:01 a.m.[3] On November 5, 1992, the union gave Employer notice that a work stoppage would occur on November 19, 1992.[4] On November 18, 1992, Employer formally requested that union workers continue working under the terms of the pre-existing contract. On November 19, 1992, the union reported to work, but gave Employer notice that a one day work stoppage would occur on November 20th. Also on November 19, 1992, the Medical Executive Committee, an independent entity separate from Employer, notified the hospital administrator that it was recommending to the medical staff that they consider not admitting patients until the negotiations were settled. The committee noted that, in the event of a strike, the minimum, inexperienced staff would constitute a potentially unsafe patient care situation. The committee also noted the possibility that the union may issue further notices of work stoppage activities. Accordingly, the committee stated that its recommendation was effective for the duration of the negotiations.

On November 20, 1992, at 7 a.m., the union began a one-day strike. Doctors, who are not hospital employees, discharged or transferred their patients elsewhere and did not admit new patients.[5] The union informed Employer of its intent to return to work on November 21st under the terms of the expired contract and gave notice that another work stoppage was planned to begin on December 4th, pending approval by a union vote. Employer, via facsimile at approximately 4:30 p.m., made it clear that work was available under the terms of the pre-existing contract, informed the union of the position of the Medical Executive Committee, and advised the union that under the circumstances work would only be available for some union members.[6]

On November 21, 1992, the union reported for work but was advised that there was none available because of the threat of the second work stoppage; there were no in-patients at the hospital. On November 23, 1992, Employer received notice, dated November 20th, of a work stoppage scheduled to occur on December 4th.

On November 24, 1992, Employer via facsimile requested the union to return to work under the terms of the expired contract. Employer stated that the opinion of the Medical Executive Committee remained unchanged, i.e., that the union's strike activity had created an unsafe condition for in-patient admission and that the threat of another strike on December 4th constituted sufficient reason for continuing their position against admissions.

The Board also found that the union had made an offer to return to work on November 21st under the terms and conditions of the expired contract, only to find that none was available. The Board concluded that Claimants were ineligible for benefits for the week ending November 21, 1992, because Claimants had initiated the work stoppage with a one-day strike on November 20, 1992.[7] In addition, the Board found that Claimants

---

3. Article V of the agreement expressed the parties' recognition that the unusual humanitarian nature of the hospital requires that there be no interruption of work or services. Article V also provided that employees would not engage in any interruption of work and that the hospital would not lock out employees during the term of the agreement.

4. Under federal law, employees are required to give at least ten days notice of a potential strike at a health care facility.

5. The hospital is a 40 bed in-patient facility. On November 20, 1992, there were 35 patients in the hospital; 18 patients were transferred to other locations and the remainder were discharged.

6. Outpatient and emergency room services continued during the work stoppage; employees providing those services continued to work under the terms and conditions of the expired agreement.

7. Under Section 402(d) of the Law, disqualification for any part of the week results in a loss of benefits for the entire week. *DeMoss v. Unemployment Compensation Board of Review*, 71 Pa.Commonwealth Ct. 83, 454 A.2d 1146 (1983).

did not work during the weeks ending November 28th and December 5th because there was no work available for them. Concluding that Employer was entitled to a reasonable "start-up" time following Claimants' one day strike, the Board denied benefits for the week ending November 28, 1992, and granted benefits for the week ending December 5, 1992.

Employer filed petitions for review to this Court and Claimants subsequently filed cross-appeals;[8] the four cases were consolidated by order of this Court dated October 6, 1994.

Employer argues that Claimants are ineligible for compensation for the weeks ending November 28, 1992 and December 5, 1992, because the union was the party to change the status quo after the contract expired. Employer further asserts that, due to the unusual humanitarian nature of the hospital, the lack of work resulted from the union's refusal to continue working under the terms of the expired contract.

Claimants maintain that they are eligible for benefits for the week ending November 28th for the same reason they were awarded benefits for the week ending December 5th: they were unemployed due to a lack of work, which was caused by the decisions of an independent medical staff. Claimants argue that the "start-up" analysis, which applies to the delay in recalling workers back after a contract is reached, is inapplicable to this case because Employer made no attempt to resume operations until after December 4th, when a new contract was negotiated.[9]

■ Where unemployment is due to a work stoppage, a claimant's eligibility for benefits for any week depends on whether the work stoppage is a strike or a lock-out. Where employees reject available work under pre-existing terms, employees are engaged in a strike; where an employer will not permit employees to work under pre-

existing terms the work stoppage is a lock-out. *High v. Unemployment Compensation Board of Review*, 67 Pa.Commonwealth Ct. 472, 447 A.2d 701 (1982), *aff'd*, 505 Pa. 379, 479 A.2d 967 (1984). A work stoppage can change from a strike to a lock-out and vice-versa. The party who first changes the status quo after the contract expires is held responsible for the work stoppage and has the burden of proving that a subsequent change occurred. *Schulmerich Carillons, Inc. v. Unemployment Compensation Board of Review*, 154 Pa.Commonwealth Ct. 343, 623 A.2d 921, *petition for allowance of appeal denied*, 535 Pa. 642, 631 A.2d 1013 (1993).

■ In *Vrotney Unemployment Compensation Case*, 400 Pa. 440, 163 A.2d 91 (1960), the Supreme Court stated that when a contract has expired and a new agreement has not yet been reached:

> [T]he sole test ... of whether the work stoppage is the responsibility of the employer or the employees is reduced to the following: Have the employees offered to continue working for a reasonable time under the pre-existing terms and conditions of employment so as to avert a work stoppage pending the final settlement of the contract negotiations; and has the employer agreed to permit work to continue for a reasonable time under the pre-existing terms and conditions of employment pending further negotiations?

*Id.* at 444–45, 163 A.2d at 93.

In *Vrotney*, the court held that the employer's rejection of a good faith offer to maintain the status quo for a reasonable period of time constituted a lockout under Section 402(d); the employees had offered to continue working under the terms of the existing agreement for an indefinite period of time with a five day cancellation clause by either party.

8. Our scope of review in an unemployment compensation appeal is limited to determining whether an error of law was committed, constitutional rights were violated, or whether necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704. *Peoples First National Bank v. Unemployment Compensation Board of Review*, 159 Pa.Commonwealth Ct. 134, 632 A.2d 1014 (1993).

9. Claimants do not appeal the denial of benefits for the week ending November 21, 1992.

What constitutes a reasonable time varies depending on the particular circumstances of each case. *McKeesport Area School District v. Unemployment Compensation Board of Review,* 40 Pa.Commonwealth Ct. 334, 397 A.2d 458 (1979). In the present case, the OES and the referee concluded that the union's offer to return to work, accompanied by the threat of a strike in thirteen days, was not for a reasonable period of time. We agree.

The Supreme Court held that a union's offer to return to work on a day to day basis did not constitute an offer to continue working for a reasonable period of time in *Lerch Unemployment Compensation Case,* 400 Pa. 446, 163 A.2d 535 (1960). The court distinguished the facts from those presented in *Vrotney,* noting that the employer in *Lerch* consisted mainly of service industries, i.e., a hotel, laundry, department store, community inn, etc. The court reasoned that the nature of those industries is such that it would be almost impossible to operate them adequately on a day to day basis. In fact, the court stated, the employer's rejection of the union's offer could well have been anticipated by the union.

Similarly, in the present case, the parties acknowledged in the collective bargaining agreement that the humanitarian nature of the hospital requires that there be no interruption of services. The record reflects that the hospital was closed for several weeks in 1987 due to strike activity. The Medical Executive Committee and doctors reasonably believed that the safety and well-being of the patients required the assurance of continued adequate staffing at the hospital. We conclude that Claimants' offer to return to work accompanied by notice of a subsequent strike in thirteen days did not provide the assurance reasonably required to ensure patient safety and well being.

As Claimants' offer was not for a reasonable time, Employer could not reasonably be expected to accept their offer. Like the claimants in *Lerch,* Claimants here could well have anticipated that their offer would have been rejected by Employer, particularly in light of the opinion of the Medical Executive Committee, which was communicated to Claimants on more than one occasion.

Claimants, having first altered the status quo, had the burden of offering to restore it by offering to return to work for a reasonable time under the terms and conditions of the expired contract. *Philco Corp. v. Unemployment Compensation Board of Review,* 430 Pa. 101, 242 A.2d 454 (1968). Since Claimants' offer was not for a reasonable time, the work stoppage remained a strike for purposes of Section 402(d).

The Board erred as a matter of law in concluding that Claimants' unemployment resulted from a lack of work caused by the acts of third parties who were not involved in the labor dispute, rather than a strike. On appeal to this Court, the parties continue to argue the question of what caused the lack of work. However, having concluded that Claimants failed to make an offer to return to work for a reasonable time under the pre-existing terms and conditions of their employment, we need not address assertions as to other causes of Claimants' unemployment.

Accordingly, we affirm the Board's denial of benefits for the week ending November 28, 1992 and we reverse the Board's award of benefits for the week ending December 5, 1992.

*ORDER*

NOW, May 3, 1995, the orders of the Unemployment Compensation Board of Review, at Nos. B–327233 and B–327234, dated July 18, 1994, is affirmed in part and reversed in part in accordance with the foregoing opinion.