Michael J. ZAPPONO, Petitioner,

v.

UNEMPLOYMENT COMPENSATION
BOARD of REVIEW, Respondent.

Allison Cooper, Petitioner,

v.

Unemployment Compensation Board
of Review, Respondent.

Victoria Dupree, Petitioner,

v.

Unemployment Compensation Board
of Review, Respondent.

Commonwealth Court of Pennsylvania.

Argued May 16, 2000.
Decided July 31, 2000.

Joshua P. Rubinsky, Philadelphia, for petitioners.

Judith M. Gilroy, Harrisburg, for respondent.

Richard L. Strouse, Philadelphia, for intervenor, Southeastern PA Transportation Authority.

Before SMITH, Judge, PELLEGRINI, Judge and NARICK, Senior Judge.

SMITH, Judge.

Petitioners Michael Zappono, Victoria Dupree and Allison Cooper are employees of the Southeastern Pennsylvania Transportation Authority (SEPTA) and members of the Transport Workers Union Local 234 (Union). They petition for review of an order of the Unemployment Compensation Board of Review (Board) that affirmed the decision of a Referee to deny their request for unemployment compensation benefits during a work stoppage. The issue before the Court is whether that work stoppage was the result of a strike or a lockout as those terms are used in Section 402(d) of the Unemployment Compensation Law (Law), Act of December 5, 1936, Second Ex.Sess., P.L. (1937) 2897, *as amended,* 43 P.S. § 802(d).

The Collective Bargaining Agreement (Agreement) between SEPTA and the Union expired on March 15, 1998 before negotiations produced a settlement on terms for a new agreement. Thereafter Union members continued working on a day-to-day basis through May 31 under the terms and conditions of the expired contract. On the eve of the work stoppage, SEPTA offered to continue work under the terms and conditions of the expired contract, but the Union initiated a work stoppage on June 1. The Union never informed SEPTA before the work stoppage that the Union believed SEPTA had unilaterally changed the terms and conditions of the expired contract.

The Union made public statements during the work stoppage explaining that the Union initiated the work stoppage because SEPTA took a hard bargaining position and because SEPTA's proposals were unacceptable to the Union. The Union never contended in its statements during the work stoppage that SEPTA had unilaterally changed the status quo or had refused to continue operations under the terms and conditions of the expired contract. The Union offered on June 4 to return to work under the terms and conditions of the expired contract if SEPTA agreed to binding arbitration to resolve the contract negotiations. SEPTA refused binding arbitration but offered again to provide work under terms and conditions of the expired contract. The work stoppage ended on July 11, 1998, and Petitioners returned to work.

Petitioners, as token claimants, applied for benefits during the work stoppage contending that it resulted from a lockout rather than a strike because SEPTA refused the Union's June 4 offer. The Office of Employment Security (OES) denied Petitioners' applications. On appeal to the Referee, Petitioners claimed for the first time that the work stoppage was a lockout because SEPTA unilaterally changed the terms and conditions of employment.

Three provisions of the Agreement are relevant to Petitioners' claims that have been preserved for this appeal. These provisions pertain to work assignment pickings, to the Medically Disabled Temporary Duty (MDTD) program and to a safety awards banquet.

The work assignment picking provision was set forth in Section 426(h) of the Agreement and implemented through a side agreement.[1] The Union contended that SEPTA unilaterally changed the terms of the pickings provision after the Agreement expired when SEPTA posted work assignments for pickings in some work locations, which made the categories of jobs more general in nature. Although the total number of jobs remained about the same, SEPTA significantly reduced the types of assignments available to be picked by Union members. The Union also contended that SEPTA changed the terms of the MDTD provisions[2] after the Agreement expired when it failed to place Union members who were medically eligible for MDTD assignments into temporary work positions. The Union further contended that SEPTA changed the safety banquet provisions when it failed to reschedule the banquet in April or May 1998.[3]

The Referee concluded that the Union failed to establish that the work stoppage resulted from a lockout. Among other things, the Referee explained:

No competent evidence was presented to show the union made it known in these comments or otherwise that they believed the employer had made unilateral changes in the pre-existing contract. The union now contends that such changes were one of the reasons for the work stoppage. The Referee does not question the motivation of the union for calling this work stoppage. However, by failing to inform the employer of their belief that the employer had made unilateral changes to the pre-existing contract, the employer had no opportunity to respond and attempt to address the union's contentions, or to refuse to allow the union to continue working under the terms and conditions of the pre-existing contract as defined by the union.

Referee's decision at p. 7. Accordingly, the Referee affirmed the OES. The Board concluded that the Referee's decision was proper and therefore affirmed it.[4]

---

1. Section 426(h) provided:

   Employees of the surface and subway elevated rolling stock and shops department and division shall have the right to pick their primary work assignments as scheduled by the authority in accordance with their classification seniority. Schedules prepared by the authority will list the primary work assignment, reporting location, starting times, finishing times and scheduled days of the week on which assigned work is to be performed. Such pickings will be held at least twice per year with no more than 8 months between any pickings. The side agreement provided in relevant part:

   The following are guidelines for the implementation and execution of Section 426(h):
   1. Management will have the right, subject to the schedule review process, to determine the primary work assignments that will be specified on the picking sheets.

2. Section 504(2)(b) of the Agreement created the MDTD program. The section provided:

   Employees who are temporarily disabled due to an on the job injury or who are temporarily disabled and have expired [sic] their sick leave will be assigned to a temporary work which they are physically able to perform.... The Authority, in its sole discretion, will make assignments including, hours, tasks, and days off, provided, however, that the medical opinions concerning the appropriateness of such assignments may be subject to medical dispute resolution procedures of Section 1201.

3. Section 1102A of the Agreement provided for the banquet, but it did not specify when the banquet would be held. SEPTA decided not to hold the banquet in April or May 1998 because of the difficult contract negotiations during that time.

4. The question of whether a work stoppage resulted from a lockout or a strike is a mixed question of law and fact subject to the Court's review. *Miceli v. Unemployment Compensation Board of Review*, 519 Pa. 515, 549 A.2d 113 (1988).

Under Section 402(d) of the Law, an employee shall be ineligible for compensation for any week: "In which his unemployment is due to a stoppage of work, which exists because of a labor dispute (other than a lockout) at the factory, establishment or other premises at which he is or was last employed...." In *Vrotney Unemployment Compensation Case*, 400 Pa. 440, 444–445, 163 A.2d 91, 93–94 (1960), the Supreme Court established the following test for determining whether a work stoppage results from a lockout or a strike:

> Have the employees offered to continue working for a reasonable time under the pre-existing terms and conditions of employment so as to avert a work stoppage pending the final settlement of the contact negotiations; and has the employer agreed to permit work to continue for a reasonable time under the pre-existing terms and conditions of employment pending further negotiations? If the employer refuses to so extend the expiring contract and maintain the status quo, then the resulting work stoppage constitutes a 'lockout' and the disqualification for ... benefits in the case of a 'stoppage of work because of a labor dispute' does not apply.

The essence of the *Vrotney* test is the offer to continue working under the pre-existing terms and conditions of employment. The key to its application is to determine which side "refused to continue operations under the status quo after the contract had technically expired, but while negotiations were continuing." *Philco Corp., Inc. v. Unemployment Compensation Board of Review*, 430 Pa. 101, 103, 242 A.2d 454, 455 (1968). Each week of unemployment is the subject of a separate claim, and a work stoppage that began either as a strike or as a lockout may be converted into its opposite if the party that initially refused to continue operations offers to do so and the other party now refuses. *High v. Unemployment Compensation Board of Review*, 505 Pa. 379, 479

A.2d 967 (1984). Where the work stoppage takes the form of a strike, the burden is upon the union to show that it made the initial move by offering to maintain the status quo. *Philco Corp.* The union must establish that it was willing to maintain the status quo and that the employer refused to do so. *Stanley Flagg and Co., Inc. v. Unemployment Compensation Board of Review*, 146 Pa.Cmwlth. 248, 605 A.2d 443 (1992).

In the present case, the Union clearly failed to offer to continue working under the pre-existing terms and conditions of the expired contract during the period for which Petitioners seek compensation. The Union never notified SEPTA that it was willing to continue work under the terms and conditions in effect prior to the alleged unilateral changes by SEPTA. The Referee found that the Union never even informed SEPTA that the Union believed SEPTA had altered the status quo. To the contrary, the Union made public statements indicating that it had initiated the work stoppage for reasons unrelated to the alleged changes, and the Union offered to return to work under the pre-existing terms and conditions after June 1, 1998 only if SEPTA agreed to binding arbitration. An offer to continue working only if the other party submits to a new term to which the party has no pre-existing obligation to accede does not constitute an offer to continue working under the pre-existing terms and conditions of an employment contract. *Burkes v. Unemployment Compensation Board of Review*, 43 Pa.Cmwlth. 521, 402 A.2d 731 (1979).

The Court recognizes that a union is not required to make a futile offer to continue working under the pre-existing terms that will definitely not be accepted by the employer. *Philco Corp.* However, the Union does not argue that an offer would have been futile in this case, and, moreover, the evidence of record would not support a finding of futility. If the Union was willing to continue operations but for SEPTA's alleged changes in the

status quo then the entire work stoppage might have been avoided if the Union had merely notified SEPTA of that fact. The Supreme Court's concluding language in *Philco Corp.* is particularly apt:

> When it is considered that this entire controversy could have been avoided had the union merely asked one simple question, or sent some of its members to work on Monday in a bona fide effort to continue the status quo, this Court will not allow such a question to go unasked, or such action to go untaken, without a clear showing that a request for status quo would actually have been futile.

*Id.* 430 Pa. at 110, 242 A.2d at 459.

Moreover, the Union's claim that SEPTA first changed the status quo is unavailing. Even if SEPTA altered the status quo, SEPTA never had an opportunity to agree to continue operations under the terms that the Union believed to constitute the status quo because the Union never informed SEPTA that it objected to SEPTA's practices. *Compare AVCO Corporation v. Unemployment Compensation Board of Review,* 739 A.2d 1109 (Pa. Cmwlth.1999) (holding that a work stoppage was a lockout where the union notified the employer that it objected to the employer's change of the status quo and that it was effectuating the work stoppage in protest); *Portec, Inc., RMC Division v. Unemployment Compensation Board of Review,* 104 Pa.Cmwlth. 629, 522 A.2d 1180 (1987) (holding that a work stoppage was a lockout where the employer unilaterally imposed changes to the status quo and the union repeatedly advised the employer of its willingness to maintain the status quo).

■■■ The *Vrotney* test is designed to encourage the continuation of the working relationship while the parties negotiate a new agreement and to relieve economic distress in cases where employees become unemployed through no fault of their own. *Hoffman v. Unemployment Compensation Board of Review,* 524 Pa. 470, 574 A.2d 57 (1990); *AVCO Corporation.* In this case, Petitioners seek compensation despite the fact that the Union made no effort to continue the working relationship by offering to continue working under the pre-existing terms and conditions of the expired contract. The Union never even notified SEPTA that it considered its practices to constitute an alteration of the status quo.[5] Under such circumstances, SEPTA cannot be said to have refused to continue operations under the status quo, and allowing Petitioners to receive compensation would offend the fundamental purposes of the *Vrotney* test. Accordingly, the work stoppage was a strike, and the Board correctly concluded that Petitioners are not entitled to unemployment compensation benefits.

## O R D E R

AND NOW, this 31st day of July, 2000, the order of the Unemployment Compensation Board of Review is affirmed.

---

5. The Union filed a grievance of SEPTA's actions concerning the work assignment picking provision. Subsequent to the Board's order in this matter, an arbitrator rendered a decision which upheld the Union's grievance in part. The Union requests that the Court remand the matter for the Board to consider the arbitrator's decision. However, that decision is relevant only to the issue of whether SEPTA changed the status quo regarding the work assignment picking provision. In light of the Court's conclusion that the Union never offered to continue operations under the status quo, remand for consideration of the decision would be pointless.