Rosalie **SKRZYSOWSKI,** et al., Petitioners

v.

**UNEMPLOYMENT COMPENSATION BOARD OF REVIEW,** Respondent.

Commonwealth Court of Pennsylvania.

Argued Nov. 1, 2004.
Decided Dec. 1, 2004.

---

Jonathan K. Walters, Philadelphia, for petitioner.

Joseph S. Sileo, Scranton, for intervenor, Wyoming Valley Health Care System–Hospital.

BEFORE: COLINS, President Judge, SMITH–RIBNER, Judge, and FLAHERTY, Senior Judge.

OPINION BY President Judge COLINS.

Claimants, 309 registered nurses, petition for review of an order of the Unemployment Compensation Board of Review that affirmed a decision of a unemployment compensation referee denying unemployment compensation benefits to Claimants for three one-week periods from January 30, 2003 through February 14, 2003.

The referee's findings of fact, adopted by the Board, provide the following factual background. Claimants worked for Wyoming Valley Health Care System (Employer) under the terms and conditions of a collective bargaining agreement between Employer and Claimants' union representative, the Pennsylvania Association of Staff Nurses & Allied Professionals (Union), which expired on January 26, 2003. Although the Union and Employer had engaged in negotiations before the expiration of the agreement, they were unsuccessful in reaching a new agreement before the expiration of the existing agreement. The Union notified Employer on January 16 that it intended to initiate a two-day work stoppage commencing January 27. On January 17, Employer sent a letter to the Union requesting that the Union withdraw its work-stoppage notice by January 20, because if the Union failed to do so, the Employer would hire replacement nurses for those participating in the stoppage. Shortly after that January 20 deadline, and apparently before the Employer hired replacement nurses, the Union indicated that, instead of having a work-stoppage commencing January 27, the work stoppage would commence for a two-day period beginning January 30.

The Employer sent a notice to the Union on January 24, indicating that it intended to hire replacement nurses for the period of the work stoppage and extending beyond the second day of the stoppage, February 1, for probably eight days. The Union sent a letter to the Employer on January 29 stating that the Union's members were willing to return to work after the two-day stoppage under the terms of the expired agreement **for a reasonable amount of time,** but that the Union would initiate a second strike and picketing activities on February 9. The notice also stated that the Union would rescind the February 9 strike notice, and the Claimants would return to work for a reasonable amount of time if the Employer agreed to allow the Claimants to work under the terms of the expired contract, and if the Employer provided such assurances.

The Union began its work stoppage and picketing on January 30. On January 31, the Employer acknowledged by letter the Union's January 29 notice of the intent to return for a reasonable period and second strike. The Employer also notified the Union that, because the Union's notice did not indicate the end date of the second strike, the Employer would have to engage replacement nurses at least through February 21. The Employer also indicated that, if the Union rescinded the strike notice by February 4, and provided assurances that its members would not issue any further strike notice through February 28, the Employer would not engage the replacement nurses. Finally, the Employer stated that nurses who intended to work during the strike needed to provide the Employer with written notice by February 6.

The Union sent a letter to the Employer on February 4 offering to return to work immediately under the terms of the expired contract and to submit the remaining issues to expedited binding arbitration. On February 14, the Union and the Employer signed a tentative agreement for members to return to work on February 19. The work stoppage ended on February 19 and Claimants returned to work.

The period of work stoppage in this case occurred from January 30 through February 15. However, both parties agree that the first week of the work stoppage, ending February 1, was a strike for which Claimants are not entitled to unemployment compensation benefits. The dispute here concerns the weeks ending February 8 and February 15. The referee, as affirmed by the Board, concluded that both weeks were not compensable, opining that the Union had changed the status quo after the work stoppage, and had failed to prove that the nature of the work stoppage had changed the second and third weeks from a strike to a lock-out.

In this appeal, Claimants raise the following issue: Whether the Board erred in concluding that the Union did not offer to return to work for a reasonable period of time, where the Union notified the Employer that it would rescind its pending federally-required strike notice if the Employer accepted the Union's offer to return to work under status quo conditions?

Section 402(d) of the Pennsylvania Unemployment Compensation Law (Law), Act of December 5, 1936, P.L. (1937), 2097, 43 P.S. § 802(d) provides that employees shall not be eligible for benefits for any week "[i]n which his unemployment is due to a stoppage of work, which exists because of a labor dispute (other than a lock-out) . . . ." Thus, we must consider whether the Board erred in concluding that the two-week period in question constituted a strike rather than a lock-out.

When employees offer to continue to work for a reasonable period of time

under the terms and conditions of the expired contract pending the settlement of the new contract negotiations, and an employer does not agree to allow the employees continue under those former terms and conditions, then the situation is a lock-out. *Zappono v. Unemployment Compensation Board of Review,* 756 A.2d 1195, 1198 (Pa. Cmwlth.2000), relying on *Vrotney Unemployment Compensation Case,* 400 Pa. 440, 444–445, 163 A.2d 91, 93–94 (1960). In *Zappono,* the Court stated that, in order to analyze this decisive question, the Court must determine whether one side or the other declined to continue under the status quo after technical expiration of the contract and during a period when negotiations were continuing. Further, a week that begins as either a lock-out or strike can shift to the opposite, if the party that first refused to maintain the status quo later agrees to work under the terms of the former contract. Also, if employees initiate a strike, as in this case, they bear the burden of proving that the employer refused to allow the employees to continue under the old contract. *Behers v. Unemployment Compensation Board of Review,* 577 Pa. 55, 842 A.2d 359 (2004).

■ The issue here involves the question of whether the Claimants, in accordance with *Zappono,* agreed to return to work for a reasonable period of time. In *Miners Hospital v. Unemployment Compensation Board of Review,* 658 A.2d 495 (Pa.Cmwlth.1995), this Court held that a union's offer to return to work under the terms of the old contract, but with an accompanying threat to strike in thirteen days, was not an offer to return to work for a reasonable period of time. Claimants contend that *Miners,* upon which the Board relied in reaching its decision, is distinguishable from this case, because the union offered to rescind the strike notice if the Employer agreed to allow the Claim-

ants to return to work under the terms of the expired contract for a reasonable period of time. On its face, the Union's offer was conditional——the Union would rescind the strike notice only if the Employer agreed to allow the return to work. Employer asserts that the offer to return to work required Employer also to give Claimants assurances that their return to work would be under the terms of the expired contracts, thus making the offer not for a reasonable period of time (because of the threat to strike in eight days) and conditional (on the Employer's assurances).

Claimants argue that they were forced to notify the Employer of its intent to strike on February 9 because of applicable federal law requiring ten-day's notice. However, although the collective bargaining process may impair a claimant's ability to access such benefits, we are nonetheless bound by the terms of the Law in deciding the question of whether a party has agreed to return to work for a reasonable period of time. In this case, the Union threatened to strike eight days after returning to work, five days less than the time at issue in *Miners.* Further, Claimants conditioned their return to work and the rescission of the strike notice on receiving assurances from Employer that the Claimants could return to work under the terms of the old contract. If Claimants had made a simple offer to return to work under the status quo for a reasonable period of time, and had Employer refused that simple offer, the burden would have shifted to the Employer to prove that it had not refused to allow operations to continue under the status quo.

Based on the foregoing, we conclude that the Board did not err in relying upon *Miners* and in determining that Claimants did not agree to return to work for a reasonable period of time.

## ORDER

AND NOW, this 1st day of December 2004, the order of the Unemployment Compensation Board of Review is affirmed.